# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0093-18T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

R.P.B.,

     Defendant-Appellant.

_____

       Submitted November 18, 2019 – Decided December 13, 2019

       Before Judges Sabatino and Geiger.

       On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 06-10-2344.

       Joseph E. Krakora, Public Defender, attorney for appellant (Abby P. Schwartz, Designated Counsel, on the brief).

       Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica Lucinda do Outeiro, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant R.P.B.[1] appeals from the denial of his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm in part and remand in part.

## I.

## A.

In June 2006, defendant resided with his twelve-year-old son and two other children ages eleven and ten. While residing with the children he acted as their parent. Defendant failed to provide adequate food to the children and kept the house in a filthy, unkempt condition. Allegations surfaced that he had engaged in sexually assaulting and endangering the children and acting lewdly in their presence.

A Monmouth County Grand Jury returned an indictment charging defendant with four counts of second-degree endangering the welfare of a child, N.J.S.A. 24-4(a) (counts one, two, six, and seven); two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b) (counts three and four); and fourth-degree lewdness, N.J.S.A. 2C:14-4(b)(1) (count five).

---

[1] We use initials to identify defendant and the victims to protect the privacy of the victims. R. 1:38-3(d)(10).

A-0093-18T3

On December 11, 2006, defendant entered into a plea agreement with the State. During the plea hearing that day, the assistant prosecutor recited the terms of the plea agreement on the record. In exchange for his guilty plea to counts one, two and five, the State agreed to treat counts one and two as third-degree offenses for sentencing purposes, and to recommend concurrent four-year flat sentences on counts one and two and a concurrent flat one-year sentence on count five. Defendant would be required to comply with Megan's Law and be placed on Parole Supervision for Life (PSL). The remaining counts would be dismissed. Trial counsel confirmed that the terms recited by the assistant prosecutor were correct.

The plea form stated defendant would be subject to Megan's Law and PSL. The Additional Questions for Certain Sexual Offenses plea form specifically addressed the requirements of Megan's Law and PSL. With regard to Megan's Law, the supplemental plea form asked defendant whether he understood the following consequences of his plea: (1) he must register with certain public agencies; (2) he must re-register no less than ten days before changing his residence; (3) he could be charged with a fourth-degree crime and receive a sentence of up to eighteen months if he fails to register or re-register; (4) he could be required to verify his address with the appropriate law enforcement

3

agency every ninety days but no less than annually; (5) if he fails to verify his address as required he could be charged with a fourth-degree crime and receive a sentence of up to eighteen months; and (6) law enforcement, community organizations, or the public at large may be notified of his release from incarceration or presence in the community. Defendant's answered each question, "yes" or "N/A."

As to PSL, the supplemental plea form asked the following questions:

> 4b. Parole Supervision for Life (only complete if the offense occurred on or after January 14, 2004).
>
> > (1) Do you understand that if you are pleading guilty to the crime of aggravated sexual assault, sexual assault, aggravated criminal sexual contact, kidnapping pursuant to 2C:13-lc(2), endangering the welfare of a child by engaging in sexual conduct which would impair or debauch the morals of a child pursuant to 2C:24-4a, endangering the welfare of a child pursuant to 2C:24-4b(3), luring or an attempt to commit any of these offenses and the offense occurred on or after January 14, 2004, the court, in addition to any other sentence, will impose a special sentence of parole supervision for life?
> >
> > (2) Do you understand that being sentenced to parole supervision for life means that upon release from incarceration or immediately upon imposition of a suspended sentence you will be supervised

4

by the Division of Parole for at least 15 years and will be subject to provisions and conditions of parole, including conditions appropriate to protect the public and foster rehabilitation, such as, but not limited to, counseling, and other restrictions which may include restrictions on where you can live, work, travel or persons you can contact?

(3) Do you understand that if you violate a condition of parole supervision for life, your parole may be revoked and you can be sent to prison for 12 to 18 months for each revocation that occurs while you are being supervised and that the prison term you receive cannot be reduced by commutation or work credits?

(4) Do you understand that if you violate a condition of parole supervision for life and you are indicted and convicted for that violation, you will receive a sentence of imprisonment of up to 18 months and that the sentence you receive could be in addition to any prison term you may receive from the Parole Board for a violation of parole supervision for life?

Defendant answered all four questions, "yes."

The trial court conducted a colloquy with defendant during which he confirmed he understood the terms of the plea agreement as related by the prosecutor. In answering questions posed by the court, defendant acknowledged that his attorney had gone over all the pending charges with him and answered

5

all his questions about the charges. He indicated he was satisfied with the legal services rendered by his attorney.

Defendant acknowledged signing and initialing the standard plea form and supplemental plea forms for sexual offenses. He acknowledged reading the plea forms and going over them with his attorney. He confirmed that he understood the plea forms and that his answers were "accurate, truthful and complete." He confirmed understanding the constitutional rights he was waiving by pleading guilty.

The trial court then asked the following question regarding PSL:

> Q. You're going to be on parole supervision for life. You're going to have to register as a sex offender. There could be internet registration. Your travel could be restricted and everything else has been gone over on this document entitled additional questions for certain sexual offenses. Do you understand that?
>
> A. Yes.

Defendant acknowledged he entered into the plea agreement of his own free will. He confirmed that neither the police, the prosecutor, nor his attorney made any promises other than the terms of the plea agreement. Defendant did not ask any questions of the court or trial counsel during the plea hearing.

The trial court then requested trial counsel to establish a factual basis for defendant's plea. In response to counsel's questions, defendant admitted to

A-0093-18T3

residing with the three victims, all of whom were minors, and that he had the power to parent them. He then admitted he failed to provide adequate food to the children and kept the house in a filthy condition. Defendant also admitted that he displayed his genitals to the children and struck his penis against their clothing for his own sexual gratification. The court accepted defendant's guilty plea.

Defendant contended he was addicted to Percocet at the time of the offenses. When interviewed for the presentence report, defendant related he was "unsure of what happened as he was under the influence." Defendant did not pursue an intoxication defense.

On July 6, 2007, defendant appeared for sentencing. Trial counsel stated that he had reviewed the presentence report with defendant and he found it to be "factually accurate" with one clarification. Counsel advised that the presentence report stated defendant said "his attorney gave a statement for him which he really did not agree to." Counsel stated that when he discussed that language with defendant, "[h]e indicated" he had "no idea where that came from." Counsel also confirmed that he had discussed raising an intoxication defense prior to the plea and earlier that day. Counsel reported that defendant "indicated

A-0093-18T3

to [him] that in light of the plea offer given to [defendant] by the State, he did not wish to pursue an intoxication defense." Defendant chose not to allocute.

Defendant was sentenced in accordance with the terms of the plea agreement to an aggregate four-year flat term, appropriate fines and penalties, required to comply with Megan's Law, and placed on PSL. He was awarded 307 days credit for time served and fifty-eight days of gap time.[2] Defendant did not appeal his conviction or sentence.

Defendant served his prison term and was released subject to Megan's Law and PSL, which he violated on several occasions, resulting in further charges, convictions, and incarceration.

In July 2016, defendant received a notarized letter from his son, recanting his allegations against defendant. The letter stated, in pertinent part:

> I would like to state that I am writing this letter on my own free will, no one is forcing me. The purpose of this letter is to hopefully keep my father, [R.P.B.] from being incarcerated any longer. At the age of [eleven] I made allegations to a detective and the [S]tate that my father was sexually abusing me. These allegations are false. Sadly and regretfully I lied in order to be removed from my father[']s care and placed with my uncle [J.B.]. I lied because my father was

---

[2] The record does not disclose the date of defendant's release from prison but after applying the jail credits and gap time, defendant would have maxed out on his aggregate four-year term no later than July 5, 2010, without even considering any additional credits earned while in prison.

abusing drugs and at the time he scared me while under the influence. At the time he was not being a good father. He would get angry more often and sometimes hit me. Which just scared me more. But that is all he is guilty of. He would never do anything sexual to me or anyone else for that matter. While living in my father[']s care things did not improve. He continued his use of drugs and always arguing with his girlfriend. I was not happy and felt as though I was not being heard. So I made false allegations knowing [the Division of Youth and Family Services] would have to remove me. Yes I was young but I learned at a young age having gone through the system so much that these lies would have me removed from my father[']s care. At the time however being so young, I didn't realize how severe the consequences would be. He has spent most of his life since incarcerated for a crime he did not commit. . . . Having grown up I realize how much I need my dad and how wrong I was to make such allegations against him.

In February 2017, defendant filed a pro se petition for PCR. He claimed ineffective assistance of counsel, alleging trial counsel failed to listen to or argue the facts pertaining to his case and "to reverse [the] plea agreement." Defendant also alleged newly discovered evidence was received in July 2016. The petition further alleged that defendant's "reason for accepting the plea offer was to protect [his] girlfriend of [five] years at the time. She was threatening her life if she did not get released soon." Defendant asserted that when he told this to his trial counsel, "he did not want to hear about it."

PCR counsel was appointed to represent defendant and submitted an amended petition and supporting certification of defendant. Defendant claimed trial counsel was ineffective because he failed to advise him of the penal and collateral consequences of his plea. In his certification, defendant stated his trial counsel told him the plea agreement "would finalize [his] legal matter in Monmouth County and no other action would be taken as a result of [the] plea." He further stated that trial counsel "refused to do any investigation into [his] case even though [he] protested [his] innocence."

Defendant claimed he "did not want to take the plea as [he] did not perform any criminal sexual acts toward the victims and only took the plea to protect the victims and [his] girlfriend who was residing with [him] at the time." He admitted, however, that he "was guilty of endangering the children for having drugs in the home and for keeping a very dirty and unkempt home not suitable for children."

Defendant stated his trial counsel "encouraged [him] to plead guilty as the plea deal was to [his] benefit." Defendant indicated he pled guilty because he was "misinformed that there was no other way to prove [he] had not committed the alleged acts." He stated he filed his petition after receiving the letter from his son in 2016, recanting the sexual assault allegations.

A-0093-18T3

Defendant requested the PCR court to relax the five-year time limit for filing PCR petitions because "he had not been properly advised as to the conditions he would face upon release and only now realizes their implications," and due to the newly discovered evidence set forth in his son's recantation letter. Defendant also requested an evidentiary hearing, claiming he had presented sufficient evidence to establish a prima facie case of ineffective assistance of counsel.

The State countered that defendant's petition was time-barred and defendant did not meet any of the exceptions to the time-bar. The State also argued defendant was informed of the consequences of his plea by the plea forms and the court. The State further argued defendant had not shown trial counsel had failed to investigate. Finally, the State contended defendant had not demonstrated it would have been reasonable to reject the plea deal and go to trial. Therefore, the State contended defendant was not entitled to an evidentiary hearing.

As to defendant's claim of newly discovered evidence, the State argued defendant was not entitled to a new trial because a recantation letter written by only one of the three victims ten years after the offenses would not alter the outcome of the case.

A-0093-18T3

The PCR court issued a June 22, 2018 order and fifteen-page statement of reasons denying PCR without an evidentiary hearing.

The judge first addressed relaxing the five-year time ban, noting that "incomplete advice by counsel and ignorance of the law are not excusable neglect warranting a relaxation of the five-year requirement." Thus, not being informed of the consequences of Megan's Law and PSL "would not be grounds to relax the five-year filing requirement." The judge also noted defendant only received a four-year sentence and upon release was subject to the requirements of Megan's Law and PSL. He therefore knew of the consequences of Megan's Law and PSL for years prior to filing his petition in 2017. "Thus, there is no excuse for defendant's neglect in adhering to the five-year filing requirement."

The judge next addressed relaxation of the time-bar due to newly discovered evidence. The court concluded the newly discovered evidence did not relate to defendant's claim of ineffective assistance of counsel during the plea process. The judge "fail[ed] to see how a recantation letter written on June 29, 2016, almost ten years after defendant pled guilty, could possibly be relevant to defense counsel's actions during the plea process a decade earlier." The judge found "[i]t is not excusable neglect to wait nine years to file a petition . . . based on counsel's actions during the plea process merely because a victim wrote a

A-0093-18T3

recantation letter a decade later that is wholly irrelevant to defendant's grounds for [PCR]." The judge found defendant failed to establish either excusable neglect or fundamental injustice, and ruled the petition time-barred.

For the sake of completeness, the judge also considered the merits of the petition. Defendant claimed trial counsel was ineffective by misadvising him that the plea agreement would finalize the matter and because defendant "was not accurately informed of the significant consequence of pleading guilty to this crime."

The judge rejected defendant's claim that he was misadvised by counsel, stating:

> After defendant was sentenced under the terms of the plea agreement, his case was finalized; defendant has faced no subsequent criminal charges or other actions for his crimes against [the victims]. While defendant is subject to Megan's Law and [PSL], such restrictions were a part of defendant's sentence and not additional actions taken against him. Furthermore, while defendant has faced other charges as a consequence of his sentence to Megan's Law and [PSL], these are new charges due to defendant's failure to comply with the terms of Megan's Law and [PSL]. Such violations of parole and other charges are not part of the current case. Thus, defendant's counsel was accurate in advising [him] that his plea agreement would finalize his case and as such, this is not evidence that defendant's plea counsel was ineffective. It is, rather, evidence that defendant was ineffective in complying with the provisions of Megan's Law and [PSL], which terms he

13

expressly acknowledged by affixing his signature to the plea documents.

As for defendant's allegation that his prior counsel did not advise him of the consequences of his plea, defendant was advised of the consequence of his plea numerous times by the court before his sentencing, both through the plea papers and during the plea colloquy. The plea papers clearly lay out the consequences of both Megan's Law and [PSL], and next to each of these consequences, defendant circled "yes," indicating that he understood. Defendant then signed the end of both plea forms. [The plea judge] went over the forms with defendant in court and ensured that defendant had reviewed the forms with counsel and signed the forms of his own free will. [The plea judge] also informed defendant that his sentence included Megan's Law and [PSL] and explained to defendant what that means, to which defendant indicated that he understood. Thus, even if defendant's plea counsel did not advise him of the restrictions that he would face under Megan's Law and [PSL], defendant was still aware of these restrictions because he had reviewed the plea papers and was informed of these restrictions by [the plea judge] during the plea proceeding. Thus, defendant cannot satisfy the second prong of Strickland,[3] that the outcome of the proceeding would have been different but for counsel's ineffectiveness, because defendant knew the consequences of Megan's Law and [PSL] in advance of his plea and still chose to plead guilty anyway.

[(Citations omitted).]

---

[3] Strickland v. Washington, 466 U.S. 668 (1984).

A-0093-18T3

The judge next addressed defendant's claim that trial counsel failed to investigate, argue, and present the issues so as to properly represent him. The judge noted that despite bearing the burden of proof by a preponderance of the evidence, "defendant has provided no further explanation" of these alleged failures. Notably, defendant did not specify what counsel failed to investigate.

Finally, the judge briefly addressed defendant's claim of newly discovered evidence, consisting of a recantation letter by one of the victims. The judge concluded the issue was not properly raised as part of an ineffective assistance of counsel PCR claim and not properly before the court.

The judge concluded defendant failed to establish a prima facie case of ineffective assistance of counsel and thus was not entitled to an evidentiary hearing or PCR. This appeal followed.

On appeal, defendant raises the following points:

> POINT I
>
> DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS ATTORNEY FAILED TO EXPLAIN THE MEANING OF PAROLE SUPERVISION FOR LIFE. THIS POST-CONVICTION RELIEF PETITION SHOULD BE HEARD DESPITE ITS UNTIMELINESS AS IT IS DUE TO EXCUSABLE NEGLECT AND ALSO THE INTERESTS OF JUSTICE DEMAND IT.

POINT II

DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF POST-CONVICTION RELIEF COUNSEL WHEN COUNSEL FAILED TO SPECIFY THAT THE LETTER FROM C.B. REQUIRED A HEARING FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE IN THE POST-CONVICTION RELIEF PETITION. ADDITIONALLY, THE COURT ERRED IN RULING THAT IT HAD NO JURISDICTION TO CONSIDER SUCH AN ISSUE AS PART OF A POST-CONVICTION RELIEF PETITION.

II.

A.

We affirm the denial of defendant's claim that trial counsel was ineffective by failing to explain the meaning and consequences of being sentenced to Megan's Law and PSL substantially for the reasons set forth in the PCR court's June 22, 2018 written decision. We add the following comments.

Defendant's claim of ineffective assistance of trial counsel is time-barred. He filed his petition in February 2017, more than nine years after his judgment of conviction was entered on July 13, 2007. Defendant failed to file his petition within five years of the entry of the judgment of conviction. It is thereby time-barred under by Rule 3:22-12(a)(1), which requires a first petitions for PCR to be filed within five years of entry of the judgment of conviction. Defendant has

not shown excusable neglect for his woefully untimely filing or that enforcement of the time bar as to his ineffective assistance of counsel claim "would result in a fundamental injustice." R. 3:22-12(a)(1)(A).

For the sake of completeness, we too briefly address the merits of defendant's ineffective assistance of counsel argument. Defendant's claim that he was not informed of the meaning and consequences of Megan's Law and PSL is belied by the plea forms and transcript of the plea hearing. Defendant acknowledged that he read, signed, and understood the plea forms which explained the requirements imposed by Megan's Law and PSL and the potential for fourth-degree criminal charges and resulting incarceration for up to eighteen months if convicted of violating those requirements.

Defendant's claim that he was misled regarding the finality of the charges resulting from the plea agreement is also clearly without merit. Defendant was not subjected to any additional charges or punishment for his conduct that led to charges resolved through the plea agreement. His subsequent charges and incarceration resulted from violating his requirements under Megan's Law or PSL after he was released from prison. Defendant was not misled by trial counsel.

17

We likewise find no merit to defendant's unsupported allegation that trial counsel failed to investigate, argue, and present unspecified issues to the trial court so as to properly represent him. In order to establish the two elements of an ineffective assistance of counsel claim, that are required by Strickland v. Washington, 466 U.S. 668, 687 (1984) and State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey), a defendant "must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's alleged substandard performance." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). "Thus, when a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Ibid. Similarly, if defendant claims trial counsel failed to pursue certain defenses or motions, he must specify those defenses and motions. Here, defendant has failed to provide such certifications or affidavits setting forth any facts in support of his bald assertions. For that reason, his argument is unavailing.

Because defendant has failed to present a prima facie case of ineffective assistance of counsel, we concur with the PCR court that defendant was not entitled to an evidentiary hearing on these claims.

B.

We next address defendant's claim that newly discovered evidence warrants a new trial. Defendant bases his argument on the statements of his son. Settled principles inform our analysis of defendant's arguments:

> To meet the standard for a new trial based on newly discovered evidence, defendant must show that the evidence is 1) material, and not "merely" cumulative, impeaching, or contradictory; 2) that the evidence was discovered after completion of the trial and was "not discoverable by reasonable diligence beforehand"; and 3) that the evidence "would probably change the jury's verdict if a new trial were granted."
>
> [State v. Ways, 180 N.J. 171, 187 (2004) (quoting State v. Carter, 85 N.J. 300, 314 (1981)).]

Under the first criterion, a defendant must show the evidence "ha[s] some bearing on the claims being advanced." Id. at 188 (quoting State v. Henries, 306 N.J. Super. 512, 531 (App. Div. 1997)). Thus, a court must evaluate "the probable impact such evidence would have on a jury verdict." Id. at 189. Under the second criterion, "the new evidence must have been discovered after completion of trial and must not have been discoverable earlier through the

A-0093-18T3

exercise of reasonable diligence." Id. at 192 (citing Carter, 85 N.J. at 314). A defendant must "act with reasonable dispatch in searching for evidence before the start of the trial." Ibid. Under the third criterion, a defendant must show the evidence "would probably change the jury's verdict if a new trial were granted." Id. at 189 (quoting Carter, 85 N.J. at 314). "The power of the newly discovered evidence to alter the verdict is the central issue . . . ." Id. at 191.

Motions for a new trial based on newly discovered evidence are "not favored and should be granted with caution by a trial court since [they] disrupt[] the judicial process." State v. Conway, 193 N.J. Super. 133, 171 (App. Div. 1984) (citing Haines, 20 N.J. at 443). Such motions are "addressed to the sound discretion of the trial court, and its determination will not be reversed on appeal unless there has been a clear abuse of that discretion." State v. Puchalski, 45 N.J. 97, 107 (1965) (quoting State v. Artis, 36 N.J. 538, 541 (1962)); accord, State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000). That said, the PCR court must address the merits of the application by applying the Carter criteria. See Ways, 180 N.J. at 191 ("[T]he reviewing court must engage in a thorough, fact-sensitive analysis to determine if the evidence would probably make a difference to the jury.").

A-0093-18T3

Here, the PCR court did not apply the <u>Carter</u> criteria to determine if the newly discovered evidence warranted a new trial. Instead, the PCR court summarily determined the issue was not properly before it and denied the petition without considering the merits. We are constrained to remand the issue withdrawal of the plea based on newly discovered evidence for a decision on the merits.

We leave it to the sound discretion of the PCR court to determine whether to grant an evidentiary hearing and whether to require or permit amended or supplemental submissions on the newly discovered evidence issue. We express no opinion on the merits of this claim.

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0093-18T3